O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CITY OF LAGUNA NIGUEL,** | **CASE NO. SACV 09-0198 DOC (MLGx)** |
| Plaintiff(s), | |
| v. | **O R D E R GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT** |
| **FEDERAL EMERGENCY MANAGEMENT AGENCY,** *et al.* | |
| Defendant(s). | |

Before the Court is Defendants Federal Emergency Management Agency, United States Department of Homeland Security, R. David Paulison, Michael Brown, Joseph Allaugh, James Lee Witt, Dorsey Hughes, David Maurstad, Nancy L. Ward, and Sally Ziolkowski's ("Federal Defendants") Motion to Dismiss or for Summary Judgement (the "Motion"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby GRANTS in part and DENIES in part Federal Defendants' Motion.

**I. BACKGROUND**

This dispute revolves around the granting of federal disaster relief and the entrance of the

1  City of Laguna Niguel into a unique public-private partnership with private developers in
2  response to the natural disaster caused by the 1998 El Nino storms.

### A. Application for and Grant of Relief Funds

On February 9, 1998, following a request from the Governor of California, President Clinton issued Disaster Declaration No. 1203.  The Disaster Declaration triggered application of the Stafford Act, 42 U.S.C. §§ 5121 - 5207, through which California could receive federal disaster relief.  The Federal Emergency Management Agency ("FEMA") administers grant programs under the Stafford Act, including the Hazard Mitigation Grant Program ("HMGP") which provides assistance for "hazard mitigation measures which ... are cost-effective and which substantially reduce the risk of future damage, hardship, loss, or suffering in any area affected by a major disaster."  42 U.S.C. § 5170c.  Under this program, FEMA acts as the grantor of funds, with the State as the grantee.  44 C.F.R. §§ 206.433.   The State may then further allocate these funds to other entities including local governments, who act as subgrantees.  44 C.F.R. §§ 206.433(a), 206.437.

On July 22, 1998, California's Governor's Office of Emergency Services ("OES") announced that its priorities included the acquisition of "residential properties destroyed, damaged, or at imminent and continuing risk from earth movement" and that a special HMGP had been developed with FEMA to address the damage caused by the El Nino storms. Administrative Record ("AR") at 746.

On September 18, 1998, the City of Laguna Niguel (the "City" or "Plaintiff") submitted its application for HMGP funds to OES.  The City's application for the "Niguel Summit/Crown Cove Land Acquisition" ("Laguna Niguel Project") proposed that residential properties which had been destroyed or threatened by a landslide caused by the El Nino storms be purchased so that they could be demolished and the hillside on and above which they were located could be stabilized. *Id.* at 60-61.   The City requested $5,363,002 in federal funds for the purchase of nine houses and 21 condominium units. *Id.*

The City's application for the Laguna Niguel Project was forwarded by OES to the FEMA Region IX office on October 19, 1998 along with funding requests for 21 other projects.

*Id.* at 1140. On November 17, 1998, FEMA approved the City's application. *Id.* at 1134.

Concurrent with the City's funding application process, the property owners were negotiating a private settlement. On or around October 21, 1998, the developers of the properties at issue, J.M. Peters Company and Hon Development, reached a settlement with the property owners to purchase the damaged properties in exchange for full discharge of the developers from any liability and dismissal with prejudice of the property owners' lawsuits. *Id.* at 433-435, 466.

The City alleges that it consistently represented that in its original application and in subsequent conversations with OES that it planned to pass on the FEMA funds to the developers to reimburse them for a portion of the property acquisition.

### B. Withdrawal of Grant Funds

On October 13, 1999, OES requested that the City withdraw the Laguna Niguel Project. OES stated that it had determined that the project no longer met the HMGP priorities because removing the properties and repairing the hillside had already been accomplished through a legal settlement with the developers, through which the property owners had been compensated. AR at 1051. When the City refused to withdraw its application, OES wrote a letter to FEMA dated March 7, 2000 stating that the Laguna Niguel Project no longer met the HMGP priorities because "[a]ll the residences included in the City of Laguna Niguel's LHMGP application have been purchase and the residents compensated . . . [t]he hazard identified in the original LHMGP application has been mitigated." *Id.* at 1042. OES requested that FEMA "deobligate" the funds allocated to the project. *Id.*

FEMA responded to OES's request on March 14, 2000, sending a letter confirming "withdrawal and partial de-obligation" of $5,500,000 of the Laguna Niguel Project funds. *Id.* at 1039.

### C. The City's First Administrative Appeal

The City submitted its first appeal of the decision to withdraw funds to OES on May 12, 2000. AR 965-1035. OES forwarded the appeal to FEMA Region IX, recommending that FEMA deny the appeal. AR at 962-63. FEMA followed OES's recommendation, denying the

1 appeal. *Id.*

### D. The City's Second Administrative Appeal

The City submitted its second appeal directly to FEMA on February 12, 2001. Following the request and receipt of additional information from the City, OES notified FEMA Region IX that it now supported the Laguna Niguel Project and, on November 13, 2002, requested that the $5,500,000 be re-obligated by FEMA to the City. AR at 581. FEMA Region IX denied the State's request on March 31, 2003, noting that "basic eligibility issues" had not been resolved and that OES could provide documentation and its recommendation for a "second level appeal." *Id.* at 576. OES then submitted materials in support of the City's appeal. *Id.* at 33.

On May 19, 2008, after a *substantial* delay by FEMA of more than five years, FEMA Assistant Administrator David I. Maurstad denied the City's second appeal. The denial stated that the Laguna Niguel Project violated the Stafford Act's prohibition of duplication of benefits because funds had been requested by the City to acquire property from homeownerse that had already been funded through an alternative mechanism. *Id.* at 2.

### E. Procedural History

Plaintiff filed the Complaint in this action on February 18, 2009, (1) alleging violation of the Administrative Procedure Act, 44 C.F.R. § 13.21(g)(1); and (2) requesting declaratory relief. On June 29, 2009, Federal Defendants filed this Motion to Dismiss pursuant to FED. R. CIV. PROC. 12(b)(1) on the bases of sovereign immunity and lack of standing. In addition, in the alternative, Federal Defendants filed for Summary Judgment pursuant to FED. R. CIV. PROC. 56.

## II. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the Court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in

response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).

In evaluating a Rule 12(b)(1) motion, the question of whether the Court must accept the complaint's allegations as true turns on whether the challenge is facial or factual. A facial attack is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the Court is required to accept as true all factual allegations set forth in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In contrast, a factual attack (or a "speaking motion") is one in which subject matter jurisdiction is challenged as a matter of fact, and is based on evidence outside of the pleadings. *Safe Air*, 373 F.3d at 1039. In assessing the validity of a factual attack, the Court is not required to presume the truth of the plaintiff's factual allegations. *Safe Air*, 373 F.3d at 1039.

### B. Discussion

#### i. Standing

Plaintiff alleges that the City lacks standing to challenge FEMA's administrative decision because the City has suffered no injury by FEMA's denial. In order to establish standing, "the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In considering a motion to dismiss for want of standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

In its Complaint, Plaintiff alleges that it was injured "in the amount of the de-obligated grant and all allowable administrative fees and costs." Compl. ¶ 60. FEMA argues that, because the developers bought the properties from the homeowners upfront instead of the City buying the

properties directly, the City could not have possibly suffered injury in the amount of the grant. FEMA argues that the City has suffered no injury because it has not expended any funds to-date in purchasing the properties that are the subject of the grant.

Plaintiff certainly does not develop its theory of injury as thoroughly as it might have in the Complaint. However, Plaintiff does briefly set out the nature of the relationship between it and the developers that was contemplated in the grant application: "The Application advised that the City was not willing to acquire or maintain the property in question and that the acquisition and prospective maintenance would be performed by the sector." Compl. ¶ 24. It further sets forth that, while the developers would fully fund the acquisition, the "Federal share" of that acquisition–i.e., the amount that would be reimbursed to the developers by federal grant relief funds–was $5,586,257.000. Compl. ¶ 35. In addition, in its opposition, the City sets forth the arrangement more fully, stating that the developers "expended in excess of $7.5 million acting 'on behalf of and in the interests of the City'" and that "*the City is now obligated to reimburse its private sector partners* for the 75% federal share of the acquisition costs." Pl. Opp. at 33-34.

By claiming that the City has an obligation to reimburse the private developers for a portion of the funds that those developers spent in achieving the purpose of the grant, Plaintiffs have sufficiently alleged standing. The City's interest regarding the grant withdrawal is both concrete, since the City owes the developers 75% of the property acquisition costs, and imminent, as the City incurred this debt when the developers purchased the properties over ten years ago.

### ii. Sovereign Immunity

In order to sue the United States, Plaintiff must demonstrate a specific waiver of the government's immunity. *United States v. Mitchell,* 445 U.S. 535, 538 (1980). Plaintiff asserts that jurisdiction is proper in this case pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. The APA provides for judicial review of federal agency actions only where judicial review is not precluded by another statute or where actions are not "committed to agency discretion by law." 5 U.S.C. § 701(a). In this case, FEMA's actions administering the

1  HMGP are governed by the Stafford Act. The Stafford Act does not waive sovereign immunity
2  for claims based on the federal agency's "exercise or performance of or the failure to exercise or
3  perform a discretionary function or duty." 42 U.S.C. § 5148.
4        The issue of subject matter jurisdiction in this case turns on the factual question of
5  whether FEMA's 2008 decision denying the City's appeal was the denial of a discretionary
6  nature. Defendants argue that this Court lacks subject matter jurisdiction to review FEMA's
7  action because the appeal denial involved a decision to grant funds, which is an unreviewable
8  decision within FEMA's discretionary authority pursuant to the Stafford Act and therefore
9  subject to sovereign immunity. Def. Mot. to Dismiss or For Summary Judgment ("Def. Mot.")
10  at 18.
11        Plaintiff does not disagree that federal court jurisdiction is limited in cases involving
12  eligibility determinations for new grants due to the doctrine of sovereign immunity, but argues
13  that factually this is not a case involving a new grant. Instead, Plaintiff argues this is a case in
14  which the Court does have jurisdiction pursuant to the APA because it involves compliance
15  determinations for a grant that had already been approved. Pl. Opp. to Mot. to Dismiss ("Pl.
16  Opp.") at 8.
17        The Court agrees that the grant or denial of an application for federal assistance is a
18  "discretionary function or duty" under the Stafford Act for which the federal government's
19  actions are not subject to judicial review pursuant to sovereign immunity. 42 U.S.C. § 5148; *see*
20  *City of San Bruno v. FEMA*, 181 F. Supp. 2d 1010, 1015 (N.D. Cal. 2001) (holding that court
21  lacked jurisdiction over FEMA's determination that city was ineligible for federal grant money
22  because eligibility determination was a discretionary act).
23        In this respect, Defendant is challenging subject matter jurisdiction as a matter of fact,
24  and the motion is based on evidence outside of the pleadings–namely, the Administrative
25  Record. As such, this is a factual attack in which the Court is not required to presume the truth
26  of the plaintiff's factual allegations. *Safe Air*, 373 F.3d at 1039.
27        An evaluation of the factual circumstances indicates that there are not one, but two,
28  decisions by FEMA that are at issue and for which the court must determine jurisdiction: (1) the

1 acceptance by FEMA of OES's request to terminate the grant on compliance grounds on March
2 14, 2000; and (2) the March 31, 2003 denial of the request by OES City to re-obligate the funds.
3 The final administrative action in this matter, the letter determination issued by FEMA on May
4 19, 2008, summarizes the sequence of actions and appeals in this matter:

> As requested, the FEMA Region IX Office de-obligated the funds on
> March 14, 2000. In a letter dated May 12, 2000, the City of Laguna
> Niguel appealed the de-obligation action to FEMA Region IX. On
> August 21, 2000, FEMA denied this first-level appeal, based on the
> determination that the project no longer met the priorities and
> eligibility criteria . . . On August 29, 2000, OES informed the city of
> the denial. OES also informed the city it could file a second and
> final appeal within 60 days . . . On February 12, 2001, the city sent a
> letter directly to FEMA Headquarters, requesting a second and final
> administrative appeal. Subsequently, additional coordination among
> the city, OES, and FEMA Region IX resulted in a request dated
> November 13, 2002, to re-obligate funds for the project. The request
> was denied by FEMA Region IX. As a result, the City of Laguna
> Niguel submitted, through OES, an additional "second appeal"
> request to FEMA Headquarters on May 29, 2003. AR at 002.

Because there are two different actions by FEMA at issue, the Court must evaluate whether both decisions involved the agency's discretionary authority and were thus not within this Court's jurisdiction.

The letter sent to FEMA by OES on March 7, 2000 requested that FEMA "deobligate the HMGP funds that have been allocated for this project" because it "no longer meets . . . program priorities." AR at 1042. The response letter from FEMA on March 14, 2000 characterizes this letter as "requesting withdrawal and partial de-obligation project funds for the above referenced grant project." *Id.* at 1039. This request was made by OES, and pursuant to that request, FEMA terminated the grant and deobligated the funds in its letter of March 14, 2000. FEMA

characterizes the State's request as a "termination for convenience" pursuant to 14 C.F.R. § 13.44, under which the grantee notified that it desired partial termination of the City's grant. In contrast, the City argues that the termination was a compliance determination made pursuant to 14 C.F.R. § 13.43. FEMA's interpretation of the regulations should be given deference. *See Udall v. Tallman,* 380 U.S. 1, 16-17 (1965).

In this case, FEMA's argument that the issuance of the letter of March 14, 2000 constituted a termination pursuant to § 13.43 is in contradiction to the analysis performed in both of the FEMA Region IX appeal decisions. Both decisions affirmed the withdrawal of grant funds on compliance grounds. Thus, it appears at the time that FEMA treated the request for termination from OES as one involving compliance. Plaintiff argues that compliance determinations, as opposed to eligibility determinations, are not subject to the discretionary authority exception pursuant to *Graham v. Federal Emergency Management Authority*, 149 F.3d 997 (9th Cir. 1998). FEMA, on the other hand, argues that *Graham* does not apply because it "involved FEMA's decision to withhold obligated funds on the basis that certain grant conditions had not been met," whereas "funds were not obligated to the State or City at the time of the State's November 13, 2002 re-obligation request." Def. Mot. at 22. However, this argument assumes that the original decision to deobligate the funds is not at issue. Because this Court has decided that decision was a separate decision from the later 2002 denial of funds and the original deobligation decision here is exactly that in *Graham* as described by FEMA–a "decision to withhold obligated funds on the basis that certain grant conditions had not been met"–FEMA's argument is not persuasive here.

On the other hand, OES's later reversal of position and request that FEMA re-obligate the HMGP funds to the City constituted a new proceeding in which FEMA had to review the grant anew and make an eligibility determination. FEMA was not required to follow OES's recommendation regarding the reobligation of the funds simply because OES initiated the original termination. While the FEMA regulations do have a rubberstamp procedure in place for grantees and subgrantees who elect to no longer take advantage of a grant through § 13.43, the regulations do not provide a rubberstamp procedure for grantees who later change their mind and

9

decide that they would indeed like the grant money. Instead, the grantee and the subgrantee had to enter into a new eligibility determination by FEMA. This new eligibility determination was a discretionary act within FEMA's authority, and Plaintiff thus lacks jurisdiction over them because the actions of FEMA are protected by sovereign immunity. *City of San Bruno*, 181 F. Supp. 2d at 1015.

### III. SUMMARY JUDGEMENT

The Federal Defendants have filed a Motion for Summary Judgment in the alternative. Federal Defendants argue that Summary Judgment is appropriate in this case because district courts' review of agency actions under the APA are limited to the administrative record, which has already been supplied.

However, this case is in its very early stages and a scheduling conference has not even been held. Additionally, Plaintiffs have raised several issues regarding the completeness of the administrative record which should be decided before a ruling of summary judgment. Therefore, a ruling on Summary Judgment is premature.

### IV. OUTCOME

The Federal Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, and Federal Defendants' Motion for Summary Judgment is DENIED as premature.

IT IS SO ORDERED.

DATED: September 28, 2009

_____
DAVID O. CARTER
United States District Judge